**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**
**CASE NO. 2:05cv1153 (WOB)**


KATINA KEFALOS                                              **PLAINTIFF**

VS.                    <u>**MEMORANDUM OPINION AND ORDER**</u>

DAVID F. AXELROD, ET AL.                                   **DEFENDANTS**


    This matter is before the court on defendants' motion for summary judgment (Doc. #20) and plaintiff's motion to strike (Doc. #30).

    Having reviewed this matter, and concluding that these motions are appropriate for resolution without oral argument, the court now issues the following memorandum opinion and order.

### *Factual and Procedural Background*

    On July 28, 2000, plaintiff Katina Kefalos ("Kefalos") was indicted by the grand jury in the Southern District of Ohio on one count of violating 26 U.S.C. § 7201 (tax evasion). Kefalos's case was assigned to United States District Judge Algenon Marbley.

    After four other court-appointed attorneys withdrew from representing Kefalos, Judge Marbley appointed defendant David F. Axelrod, a partner with the law firm of Vorys, Sater, Seymour & Pease, LLP, to represent her on or about August 16, 2001.

    Over the next two months, Axelrod tried to confer with Kefalos about her defense, but she largely refused to communicate

with him.  She did not return his calls, and correspondence he sent to her was returned.  Kefalos also told Axelrod's secretary that they were not to file anything on her behalf.  Other than one appearance at the courthouse where they spoke briefly, Kefalos and Axelrod never met in person.

Kefalos alleges that her behavior was a result of the influence of a man named Robert McBride, whom she met in August 2001, and who directed her actions thereafter.  Kefalos alleges that Axelrod knew of McBride's control of her but failed to inform the court of that fact.

At a status conference on October 15, 2001, Axelrod reported to the court that he was having difficulty communicating with his client.  (It was this court appearance that was the only occasion on which Axelrod and Kefalos met in person.)  During this conference, Judge Marbley held Kefalos in contempt because she would not stop talking after being directed to do so by the court, and she was taken into temporary custody by the marshals.

On October 18, 2001, Axelrod faxed Kefalos a letter stating, in part:

> As I have informed you, our deadline for filing pretrial motions in your case is the close of business tomorrow, Friday, October 19, 2001.  I have repeatedly asked you to communicate with me regarding this subject in particular, and your defense in general, but you have persistently refused to do so.  You have responded to my written communications by either returning the originals or faxing copies to me with notations such as, "accepted and returned for value."  Several weeks ago, you informed my secretary that you are prohibiting us from filing pretrial motions

without your specific authorization.  Additionally, I
understand your written and oral communications to me to
mean that you do not regard me as your lawyer, or as your
legal representative in any sense.

. . . .

My present understanding of your instructions is that we are
to do nothing on your behalf.  I understand this to include
trial preparation of any kind, including interviewing
witnesses, subpoenaing witnesses, and obtaining and
presenting documentary evidence on your behalf.  If you do
not permit us to prepare, I will be unable to present any
meaningful defense at trial.  . . .

I implore you to reconsider your position, and to allow me
to help you.  Please call, fax or email your permission for
us to file pretrial motions on your behalf, and with your
comments on the motions that we have prepared.
Additionally, if my understanding of your instructions or
intentions is inaccurate in any way, please notify me
immediately.  Otherwise, if I do not hear from you by noon
tomorrow, I will infer that we are not authorized to file
motions or take any action on your behalf.

(Kefalos Dep. Exh. 38).  Kefalos did not respond to this letter.

(Kefalos Depo. 237)

Around this same time, McBride – using Kefalos's name --
began filing various false financial proceedings against both
Axelrod and Judge Marbley, including involuntary bankruptcy
petitions and property liens.  McBride was subsequently convicted
of bankruptcy fraud in the Southern District of Ohio.

Axelrod thereafter consulted several sources, including the
Ohio Supreme Court Board of Commissioners on Grievances and
Discipline, concerning his ethical obligations to Kefalos.  He
also asked a Vorys associate to research the issue of under what
circumstances a defendant could waive her right to appointed

3

counsel.  Axelrod then contacted the court and discussed his situation with Chris Glaros, a law clerk to Judge Marbley, who asked Axelrod to share his research on the issue with him.

On November 6, 2001, a fax from Axelrod was sent to Glaros. (Complaint Exh. A)  The fax contained a six-page legal research memorandum on the issue: "Can a defendant's conduct constitute a knowing and intelligent waiver of his Sixth Amendment right to assistance of counsel?"  The memo concluded with suggested approaches a court might take in dealing with an obstreperous defendant and in reaching the conclusion that the defendant's conduct constituted a waiver of the Sixth Amendment right to counsel.

On November 8, 2001, Axelrod moved to withdraw from his representation of Kefalos.  At a status conference previously scheduled for that afternoon, Judge Marbley heard that motion and reviewed with Kefalos the efforts the court had made to secure her counsel and the ensuing lack of cooperation on her part with those attorneys.  (Pl. Memo. Opp. Exh. F)  Judge Marbley also reviewed with Kefalos the fact that the court had ordered that she undergo a mental evaluation, and that she had been found competent to stand trial.  Judge Marbley found that Kefalos's actions amounted to a knowing and voluntary waiver of the right to counsel, and he ruled that Axelrod would be permitted to withdraw.  Judge Marbley appointed an Assistant Federal Public

Defender to act as stand-by counsel for Kefalos.

After his withdrawal, Axelrod submitted a fee petition seeking $28,391.70 for services rendered in connection with his representation of Kefalos.

Kefalos proceeded to trial on the tax evasion charge and was convicted.  She was sentenced to twenty-seven months imprisonment and three years supervised release.

Kefalos appealed her conviction, arguing that the district court violated her Sixth Amendment right to counsel because she did not knowingly and voluntarily waive counsel and express her desire to proceed *pro se*.  *United States v. Kefalos*, 56 Fed. Appx. 248, 248 (6th Cir. 2003).  The Sixth Circuit rejected this argument and affirmed her conviction.  *Id.*

On February 27, 2003, Kefalos filed an action against Axelrod, the Vorys firm, and Chris Glaros (Judge Marbley's law clerk) alleging a *Bivens* claims and several state law claims. *Kefalos v. Axelrod*, S.D. Ohio No. 03cv180.  In 2005, the district court dismissed the *Bivens* claims with prejudice, finding no basis for jurisdiction because a court-appointed attorney is not a "federal official," and it dismissed the state law claims without prejudice.

On March 2, 2004, Kefalos filed a habeas action under 28 U.S.C. § 2255, in which she also filed a motion to recuse Judge Marbley.  That action was later dismissed.

5

Also in 2004, Kefalos filed a complaint against Axelrod with the Ohio Supreme Court. (Def. Reply Memo., Axelrod Affidavit, attachments) By letter dated January 7, 2005, the Office of Disciplinary Counsel informed Kefalos that further investigation of her complaint was not warranted and that "[t]he opinion of Disciplinary Counsel remains that there is not substantial, credible evidence of misconduct by Mr. Axelrod." (*Id.*)

Kefalos filed the instant action on December 27, 2005, against Axelrod and the Vorys firm. She alleges that Axelrod conspired with Judge Marbley, aided and abetted by his law clerk, Chris Glaros, to force her to proceed *pro se* in her criminal case, thereby depriving her of her Sixth Amendment right to counsel. (Compl. ¶ 12) She alleges that Axelrod or other employees of the Vorys firm sent *ex parte* communications to Judge Marbley and/or his law clerk that Judge Marbley then used as a "road map" in order to force Kefalos to represent herself. (Compl. ¶ 15) She also alleges that Axelrod failed to inform the court that he had learned that Kefalos was "under the influence" of a man named Thomas McBride, and that it was McBride who caused Kefalos to be uncooperative with her appointed counsel. (Compl. ¶¶ 10, 19)

Based on these allegations, Kefalos brings claims under Ohio law for breach of fiduciary duty (Count I), breach of the duty of care (Count II), and vicarious liability as to the Vorys firm for

6

Axelrod's alleged violations (Count III).

### *Analysis*

While styled as claims for breach of fiduciary duty and care, plaintiff's claims essentially sound in malpractice. "A plaintiff must prove three elements to establish a legal malpractice claim under Ohio law: (1) an attorney-client relationship giving rise to a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach." *Thompson v. Karr*, 4 F. Supp.2d 731, 733-34 (N.D. Ohio 1998) (internal quotations and citation omitted).

An attorney-client relationship exists when an attorney advises others as to their legal rights, a method to be pursued, the forum to be selected, and the practice to be followed for the enforcement of their rights. *Landis v. Hunt*, 610 N.E.2d 554, 558 (Ohio 1992).

While defendants argue that no attorney-client relationship was ever formed between Kefalos and Axelrod, the court is not so persuaded. Axelrod was appointed by the court to represent Kefalos, and he undertook to do so to the best of his ability. As his fee petition demonstrates, he (and others in his firm) expended significant time attempting to formulate a defense on Kefalos's behalf, although Kefalos was uncooperative with their attempts to engage her in that process.

Nonetheless, the court concludes that Kefalos's claims fail

as a matter of law because no reasonable finder of fact could conclude that Axelrod breached any duty he owed to her.  After their initial telephone conversation - in which Kefalos expressed skepticism about Axelrod's ability to handle her case – she adamantly rebuffed his efforts to prepare her defense.  Axelrod's repeated entreaties to Kefalos to work with him and allow him to help her were met with nonsensical responses, with no response, or with direct instructions that he should do nothing on her behalf.

Plaintiff's allegation that Axelrod breached some duty to her by not notifying the court that she was under the control of Robert McBride is also without merit because there is no record evidence that Axelrod knew about that control *at any time prior to his withdrawal from the appointed representation*.  The sole evidence on which plaintiff relies is a statement that Axelrod submitted in connection with McBride's criminal prosecution in which he states that, retrospectively, he realized that McBride had been controlling Kefalos and obstructing Axelrod's efforts to come to her defense.

Moreover, even had Axelrod been aware that Kefalos was allowing herself to be controlled by McBride, Axelrod could not force her to listen to him, nor could the court for that matter. Kefalos cites no authority that would support her assertion that he would have had a duty to interject himself in her personal

relationships in such a way.

Second, much of plaintiff's brief is devoted to the allegedly improper *ex parte* communications that occurred between Axelrod's firm and the court in relation to his motion to withdraw.  The court concludes, however, that there are no triable facts from which one could reasonably infer that these communications evidence any "conspiracy" or otherwise improper conduct which could give rise to a malpractice claim.

What Kefalos essentially argues, and what she testified to in her deposition, is that notwithstanding all her overt statements and actions obstructing Axelrod's efforts to defend her, she believes now that Axelrod should have persisted in acting on her behalf, over her express objections and without her input or assistance.  This is illogical, particularly given that the court had had Kefalos evaluated and she had been found competent.

Given the record evidence, therefore, no reasonable person could conclude that Axelrod breached any duty owed to Kefalos. Because Kefalos cannot prove a legal malpractice claim against Axelrod, her claim against the Vorys law firm for vicarious liability likewise fails as a matter of law.  *Thompson v. Karr*, 4 F. Supp.2d 731, 736 (N.D. Ohio 1998) (citation omitted).

Therefore, having reviewed this matter, and the court being otherwise sufficiently advised,

**IT IS ORDERED** that defendants' motion for summary judgment (Doc. #20) be, and is hereby, **GRANTED**, and plaintiff's motion to strike (Doc. #30) be, and is hereby, **DENIED**. A separate judgment shall enter concurrently herewith.

This 12th day of March, 2008.



**Signed By:**

**William O. Bertelsman** WOB

**United States District Judge**